BERGEN POINT IRON WORKS, PROSECUTOR, v. THE BOARD OF REVIEW OF THE UNEMPLOYMENT COMPENSATION COMMISSION ET AL., DEFENDANTS.

Submitted October 7, 1947—Decided February 18, 1948.

Before Justices DONGES, COLIE and EASTWOOD.

For the prosecutor, *Carpenter, Gilmour & Dwyer* and *Carl S. Kuebler.*

For the defendants, *Clarence F. McGovern.*

The opinion of the court was delivered by

DONGES, J. This is a writ of *certiorari* to review a determination of the Board of Review of the Unemployment Compensation Commission awarding unemployment compensation

to the defendant John F. Bonar, for the week from July 2d to July 9th, 1947, and, presumably, thereafter for the statutory period as long as he continues to be unemployed. The Board of Review found the facts as follows, and such finding is supported by the evidence: "The claimant was employed as a watchman for the above named employer. On August 16th, 1946, a strike was called at the above plant by the labor union which was recognized as the bargaining agent in protest against the discharge by the employer of one of the employees. The claimant was a member of the said labor union. The claimant continued to work for a week after the strike occurred but then was laid off because the plant had been blockaded by pickets.

"The claimant was unemployed until February 1st, 1947, when he secured a new job which he intended to accept as a permanent job. He worked there until June 16th, 1947, when he was laid off for lack of work. The strike was still in progress at the establishment where he had previously been employed.

"The claimant admitted that he had been sick in bed between June 19th and July 1st, 1947, but since that time he has been able to work and available for work.

"While the claimant is no longer employed at the struck plant and does not intend to return to work there in any event, he has, on several occasions, expressed support of the strikers and has given them some encouragement."

Based upon this factual situation the Board entered its opinion as follows: "Inasmuch as the claimant was laid off because the plant had been blockaded by pickets engaged in the labor dispute, his unemployment was originally due to a stoppage of work which existed because of a labor dispute. However, when he took permanent new employment and was subsequently laid off, his unemployment at that time was due to the layoff by the second employer and not to the stoppage of work at the first plant.

"It is argued by the employer that, had there been no strike, the claimant would still be employed at the first plant. That is problematical. He might have been laid off or he might have quit. However, when he took a supposedly permanent

job in February, 1947, he entirely disassociated himself from the first employment and from the labor dispute; and when he was subsequently laid off, his unemployment was due only to that layoff and not to the original labor dispute. Proximate cause must be shown. The influence of the labor dispute on his subsequent unemployment was so indirect that it does not meet the requirements of the statute for applying the disqualification."

The opinion then awards benefits from July 2d, holding the period of illness from June 19th to July 2d made defendant unavailable for employment during that period.

We agree with the holding that the original unemployment was due to a labor dispute and produced a disqualification under the statute, R. S. 43 :21-5. We do not agree, however, that subsequent employment and loss thereof, even though it be taken for granted that it was intended such employment should be permanent, removed the disqualification. It was testified at the hearing by a representative of the employer that the defendant could return to his old employment with all seniority and other rights. The Board held such employment unsuitable, but its unsuitability arose solely by reason of the continuance of the strike at the plant of the employer. In order to establish availability for work a claimant must be ready and willing to accept available employment similar to that which has been claimed to have been lost. *W. T. Grant Co.* v. *Board,* 129 *N. J. L.* 402. Such employment would be available to defendant except for the stoppage of work due to the labor dispute and it has been found, which finding is grounded on proper evidence, that he participated in such dispute.

In such circumstances we feel that the disqualification of the statute applies and that the determination of the Board of Review should be reversed.

COLIE, J. (Dissenting.) I am unable to agree with the holding of the majority in this case.

R. S. 43 :21-2 embodies a statement of the public policy with reference to the unemployment compensation aspect of social security and because I deem that statement of import-

ance in a consideration of the question raised in this case, it is set forth in full.

"As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state requires the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed after qualifying periods of employment."

In the instant case, John F. Bonar was laid off from his employment with Bergen Point Iron Works because of a strike at that plant. For the unemployment resulting therefrom, he was clearly disqualified from receiving unemployment benefits by reason of the provision of *R. S.* 43:21–5 (d), which provides for disqualification "for any week with respect to which it is found that his total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed * * *." As a result of the strike, Mr. Bonar ceased work on August 23d, 1946, and remained unemployed until February 1st, 1947, when he accepted employment with the Constable Hook Shipyards and there remained employed until June 16th, 1947, when he was laid off for lack of work. On the last mentioned date, the strike was

still in progress at the Bergen Point Iron Works. The majority opinion correctly holds that Mr. Bonar was disqualified from receiving benefits under the act for any part of his unemployment prior to the time when he accepted work at the Constable Hook Shipyards. To hold him disqualified as a result of his being laid off from the shipyard seems to me to defeat the very purpose expressed in the declaration of public policy quoted above. Bearing in mind that the primary purpose of this legislation is to relieve the "economic insecurity due to unemployment * * * and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family" it appears to me that the holding of the majority will have the effect of increasing the serious menace sought to be remedied by this statute in that it acts as a deterrent to a workman to go out and search for remunerative employment, which is one of the objectives that the act seeks to accomplish. It would seem that the opinion of the Board of Review wherein it held that "when he took a supposedly permanent job in February, 1947, he entirely disassociated himself from the first employer and from the labor dispute; and when he was subsequently laid off, his unemployment was due only to that layoff and not to the original labor dispute. Proximate cause must be shown. The influence of the labor dispute on his subsequent unemployment was so indirect that it does not meet the requirements of the statute for applying the disqualification." *W. T. Grant Co.* v. *Board of Review,* 129 *N. J. L.* 402, deals with a situation where the unemployment was due solely to the employee's desire to secure a position at better pay and has no application to the situation in the instant case.

For the reasons stated, I am of the opinion that the decision of the Board of Review should be affirmed.